# CAMPBELL *v.* NORTHWEST ECKINGTON IMPROVE-
## MENT COMPANY.

CONTRACTS; ACCOUNTING; REFERENCES; OBJECTIONS AND EXCEPTIONS.

1. *Northwest Eckington Improv. Co.* v. *Campbell,* 28 App. D. C. 483, referred to.
2. Where a contract between parties engaged in the exploitation and improvement of land superseded a former contract and provided that one of the parties, a builder and real-estate speculator, was to have credit for advances made by him under the abandoned contract, which he was unable to carry out, it was *held* that in a final accounting between the parties he was not entitled to credit for money advanced for organizing a company to take over the land under the first contract, where such expenditure did not enhance the value of the property or benefit the other parties in any way.
3. Where every exception filed by one of the parties to an equity suit to a report of the auditor restating an account could have been made to the first report and disposed of at the first hearing, the failure of such party then to act constitutes a waiver of his rights in the premises.
4. Where a builder and real-estate speculator under contracts with the owner of real estate was to receive a one-third interest in the land, for services performed in its improvement and sale, and he only partially performed his obligation, a decree in a suit in equity against him by the owner was *affirmed* which declared that (1) an absolute deed to him of a one-third interest in all of the land was intended only to secure him in his share of the profits when he should perform his agreement to build houses and make sales; (2) that as to the land upon which ten houses were built he was entitled to an absolute one-third interest; (3) that the contracts between the parties should be canceled; and (4) that the builder should reconvey to the other party the unimproved portion of the land, subject to any amount due him on a final settlement being paid or secured, and to his being indemnified against loss by reason of his assumption of any encumbrances thereon.
5. The evidence *held* to warrant a decree canceling certain agreements between the parties relating to building operations, and requiring defendant to reconvey to complainants an undivided one-third interest

in certain lands which had previously been conveyed to him by complainants:

No. 2176. Submitted November 3, 1910. Decided January 3, 1911.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, in a suit for the cancelation of a contract and to require defendant to reconvey to the plaintiffs an undivided interest in certain real estate and for an accounting.        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia upon a bill (1) to cancel agreements between the parties relating to building operations, (2) to require defendant, Charles M. Campbell, appellant here, to reconvey an undivided one-third interest in real estate described in the bill and which had previously been conveyed to the defendant by the complainants, (3) for a general accounting, and (4) for general relief.

Inasmuch as the case has already been before this court (*Northwest Eckington Improv. Co.* v. *Campbell*, 28 App. D. C. 483), and no new facts have since been developed, we will refer to our prior opinion for a detailed statement of the facts giving here a mere outline thereof. The complainant the Northwest Eckington Improvement Company was incorporated for the purpose of buying, developing, and selling real estate. Its stock was owned by T. Cushing Daniel and Samuel C. Redman. The company acquired from said Daniel lot 35 in the subdivision of a tract of land called Metropolis View in the District of Columbia, comprising about 10 acres. There was then an encumbrance of $32,000 upon the land. Owing to financial embarrassment Daniel and Redman were unable to exploit the land, and, being apprehensive of the foreclosure of the mortgage thereon, entered into an agreement with the defendant Campbell, who was a builder and real-estate speculator, on March 13th, 1902, by which agreement Campbell was to organ-

ize or be instrumental in organizing a company for the purchase of the land of the improvement company, and if successful Campbell was to have a one-third interest in the property; if in part successful he was to have a one-third interest in the land actually sold to the new company. Campbell did not succeed in carrying out this contract, and on October 23d, 1902, a new contract was entered into with him in which it was recited, *inter alia,* that: "3. The said Daniel, Redman, and the Northwest Eckington Improvement Company have decided to improve and market said property, as fast as may be possible, by building houses thereon.

"4. To this end they desire to utilize the skill of said Campbell as a builder and his assistance generally.

"5. It is agreed by said Daniel, Redman, and the Northwest Eckington Improvement Company to employ said Campbell as a skilful builder in the erection of said houses, he to take charge of said work, with such assistance as the other parties to this contract may be able to furnish, and pursue such work industriously and with all the ability and skill he can bring to the work."

It was also provided that "account is to be taken of all moneys and interest he (Campbell) has already advanced under contracts in relation to said property already entered into between the parties hereto. And any sums advanced or to be advanced by any of said parties for the same purpose under said agreements is likewise to be accounted for." Paragraph 7 recites that five houses are to be erected immediately upon said property, to be followed by others "as soon as such a course is warranted by the results and approved by the judgment of the parties to this agreement, said Campbell to industriously push said improvements with his best skill and ability, as provided in paragraph 5 herein, without any further compensation for his services than are provided for herein." Paragraph 8, which has been the source of much trouble, is as follows: "In return for said undertaking on said Campbell's part he is to become possessed of an undivided one-third interest in said property."

Five houses were begun in the fall of 1902, the land taken for the houses being conveyed to Redman, Daniel, and Campbell. A building loan was secured, part of which was paid to relieve the land from the original mortgage. Late in March, 1903, the same proceeding was followed and five other houses constructed. As stated by Mr. Chief Justice Shepard in the prior opinion of this court: "It is apparent that the scheme of developing the property by building sanitary dwellings, or small apartment houses as they might be called, was suggested by the expected railway development near to the Eckington lands, in contemplation of certain acts, and another bill pending in Congress, which finally resulted in the acts for the building of the new Union Station, and subsequent changes in the location of railway freight stations, tracks, etc. Respecting these improvements two acts of Congress relating thereto were approved February 12, 1901. The new bill improving thereon and providing for the Union Station, pending in 1902, became a law on February 28, 1903." In May, 1902, while Campbell was operating under the first contract of March 13th, 1902, he issued a prospectus calling attention to these railroad improvements and saying: "This railroad expenditure, which has been estimated at $20,000,000, will bring a large number of families into this region, people with steady efployment and good wages, who will want exactly this class of homes. \* \* \* It is believed by the officers that not less than 6 per cent will be earned from the date when the first forty houses are finished, and not less than 5 per cent from the date of subscriptions." The situation as regards railroad improvements, when the contract of October 23d, 1902, was executed, did not differ materially from that existing at the date of the issuance of this prospectus. On January 16th, 1903, Campbell induced the Eckington Improvement Company, without the payment of any further consideration, to convey to him an undivided one-third interest in all of the land of the company. Soon thereafter a change took place in the relations of the parties which finally culminated in the filing of complainants' bill on February 8th, 1904.

This court, for reasons stated in its opinion, found that said deed of January 16th, 1903, was not absolute, but conditional, and dependent upon the performance of the agreement in connection with which it was made. The case was thereupon remanded, the court saying: "The decree, in so far as this conveyance is concerned, is interlocutory in its nature, and for the guidance of the auditor in stating the account between the parties, and, instead of virtually establishing it as an absolute deed, should have declared it to be merely a conditional one, dependent upon the performance of the agreement in accordance with which it was made. The question whether it shall be canceled is a final one that can only be properly determined upon the coming in of the auditor's report with the account that has been ordered to be taken by him." Thereupon action was had in the court below in accordance with the mandate from this court. Upon the filing of the auditor's report the complainant noted certain exceptions. Thereupon, according to the record, the cause came to hearing before Mr. Justice Wright upon these exceptions, and, after "having been argued by counsel for the respective parties," the court overruled certain of the exceptions, sustained some, and reserved others. The court also directed the auditor to restate the account. No exception was taken by the defendant, either to the auditor's report, or to the action of the court upon complainants' exceptions. The account was accordingly restated but, as found by Mr. Justice Barnard, this second report of the auditor "amounts to nothing more than a restatement of the account in different form." Thereupon defendant filed eleven exceptions, and the case came on for hearing before Mr. Justice Barnard, who proceeded to dispose of the complainants' exceptions not finally disposed of by Mr. Justice Wright. We are concerned with but one of those exceptions, since the others were decided adversely to complainant and no exceptions taken. That relates to the disallowance of a claim of the defendant for $481.81 for incidental expenses in attempting to organize the Sanitary Dwelling Company under the abandoned contract of March 13th, 1902. The court al-

lowed two items of credit under said contract, one for $500 which Campbell paid on account of the indebtedness secured by the deed of trust on the improvement company's land, and an item of $122.91,—taxes paid by Campbell on said property. Speaking of the contract of October 23d, 1902, superseding the abandoned contract, the court said: "I am inclined to think the proper construction of this contract is, that any sums paid out by Campbell for the benefit of the enterprise, that is, for taxes, improvements, or encumbrances on the land, while he was endeavoring to dispose of the property by means of the Sanitary Dwelling Company, are to be considered in the account, and that he is to have credit therefor. This seems to me to be equitable, for it is not claimed that he did not act in good faith in his endeavor to organize the said Sanitary Dwelling Company and to dispose of the property in that manner; and whatever he paid on account of taxes or the prior encumbrance on the property, or for improvements of any kind, inured to the benefit of the owners, whoever they may be. What he paid for the experiment of organization and attempted sale to the Sanitary Dwelling Company was his own affair, and did not enhance the value of the property."

After a careful review of the case Mr. Justice Barnard stated his conclusions as follows:

"First. I feel bound by the opinion of the court of appeals, as well as from my own view of the evidence, to declare that the deed of January 16, 1903, was not intended to convey a present absolute title, but was only to secure the defendant his share of the profits in the enterprise when he should perform his share of the work of building houses and making sales. To the extent that he had performed his contract obligations, the security should be kept intact.

"Second. As to the ten houses and the land on which they stand, the defendant has an undivided one-third interest under the two deeds executed to him and to the complainants Daniel and Redman. That title was, I think, intended to be absolute, subject to encumbrances.

"Third. The contracts which were executed by the parties

plaintiff and defendant ought to be canceled, for there is no prospect of any amicable continuation of operations under the same, even if there was any desire by either party to do so.

"Fourth. The defendant should convey to the complainant the Northwest Eckington Improvement Company the title received from it, by deed of January 16, 1903, on being paid, or satisfactorily secured, what, if anything, now remains due him on settlement of accounts on the lines hereinbefore indicated.

"Fifth. If the defendant has become bound to pay any portion of the encumbrance on the said unimproved land, which is held by Mrs. Franz, the complainants should either obtain his release therefrom, or indemnify him against the same."

A decree in accordance with these conclusions was subsequently granted, from which this appeal was taken.

*Mr. John Ridout* for the appellant.

*Mr. J. H. Ralston, Mr. F. L. Siddons,* and *Mr. W. E. Richardson* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

As to the item of $481.81, we agree with the view of the learned trial justice. This item benefited the complainants in no way, and we do not think its repayment was contemplated by the October contract.

We also agree with the learned trial justice that the defendant is not entitled to be heard on the exceptions filed to the second report. Since every exception might have been filed upon the submission of the first report and disposed of at the first hearing, the defendant, by his failure then to act, waived his rights in the premises.

At the time the October contract was entered into the imminence of the railroad improvements had very favorably affected the complainants' land, and, as found in our prior opinion, "the apprehension of its loss by foreclosure was great-

ly, if not entirely, relieved." It is apparent, therefore, that the only reasons for the very favorable terms upon which the defendant was connected with the enterprise was to secure his skill as a builder, and his financial assistance in improving the property to the end that it might be speedily marketed. An examination of the contract and the testimony in the case leaves no room for doubt on this question. We think it is equally plain that when this contract was entered into the erection of many more than five houses was contemplated. Let us here briefly scrutinize Campbell's conduct, with a view to the determination of the question whether he carried out his part of the contract. He induced the complainants, upon the understanding that it was for his greater protection, to deed him one third of the property at a time when he had merely commenced to earn it. His conduct in this respect, as Mr. Justice Barnard found, is material in the light of his subsequent conduct. He built ten houses and stopped. In the building of these houses he employed a superintendent of construction, and did not, as required by his contract, personally "pursue such work industriously and with all the ability and skill he can bring to the work." The income upon the ten houses constructed was not sufficient to liquidate the fixed charges upon the balance of the property. This tends to sustain complainants' contention that the erection of many more houses was originally contemplated. It was the duty of the defendant, in his building operations under the contract, to keep a careful account of all receipts and expenditures, and to preserve all vouchers, that those interested with him in the enterprise might at any time ascertain the exact situation. This he did not do, and it was only after repeated efforts that anything like a satisfactory account was obtained from him. During the summer of 1903 it became apparent that part of the land of the complainant company was available for warehouse purposes, owing to its proximity to the railroad tracks. In November a contract was entered into, with the approval of Campbell, with one Malnati for the sale to him of a part of the land of the company suitable for warehouse purposes,

the consideration being $15,200; $6,000 of this sum was necessary to secure a release from the general trust.  When this sale was about to be consummated by deed, Campbell arbitrarily demanded one third of the surplus on the theory that he was the absolute owner of one third of all the property.  He also claimed that, before the division, he should be paid $4,-000, which he contended he had advanced in the erection of the ten houses.  At that time the complainants did not know the exact state of his account.  The defendant refused to join in the deed unless his demands were satisfied and, further, threatened to bring about a receivership for the company. Thereupon an arrangement was entered into whereby $4,000 was deposited to await the settlement of the controversy between the parties.  One third of the remainder, or $1,686.54, was paid Campbell under protest, and the remaining two thirds was received by the improvement company and expended by it in the liquidation of its obligations.  This, in brief, is the history of Campbell's efforts to carry out his part of the contract under which he was to receive a one-third interest in a valuable piece of property.  He contends, and so testified, that the original plan of building at least forty houses was abandoned by mutual consent.  The complainants testified to the contrary; and while it is quite possible that the terms of the contract would have been satisfied by the building of a sufficient number of houses to create an income equal to the fixed charges on the balance of the property, the terms of the contract being somewhat ambiguous, we are satisfied, from a consideration of the evidence before us, that the failure to construct more than ten houses was attributable to the conduct of the defendant. After he obtained the deed to one third of the property, he seems to have been impressed with the idea that it was necessary for him to do nothing more than await developments.  In fact he testifies that he was then entitled to the deed as a matter of right.  Even assuming that the original building project, owing to changed conditions, was abandoned by mutual consent, as he contends, and that warehouses were to be built instead, the defendant is in no better position; for after the com-

pletion of the ten houses he did absolutely nothing, and his conduct with reference to the Malnati sale indicated clearly the view he then entertained as to his obligations under the contract. When that sale was made, as above indicated, the income from the houses, which was the company's only source of income, was not sufficient to liquidate fixed charges. There were bills outstanding and no money was available for building purposes, and yet Campbell arbitrarily demanded payment of a sum which he claimed he had advanced over and above his receipts. Although, under his contract, he was fully protected, he arbitrarily demanded and received one third of the balance, or $1,686.54, when that sum, as he was informed and had every reason to know, was needed to develop the remaining land. His conduct after the Malnati sale, and prior to the bringing of the bill, was no better. From a careful examination of the entire record, we are forced to the conclusion that the decree was right. It is difficult to perceive wherein the defendant has been injured. He was to receive a one-third interest in certain property upon the theory of services performed in the improvement and sale of that property. To the extent that he has performed the obligation imposed upon him by the contract, his interests have been fully protected by the decree: more he has no right to expect, and more a court of equity certainly ought not to award him.

The decree will therefore be affirmed, with costs.

*Affirmed.*

An application by the appellant for the allowance of an appeal to the Supreme Court of the United States was allowed.